All right, I'll call the next case of Maurice Walker v. City of Calhoun, GA All right, I'll call the next case of Maurice Walker v. City of Calhoun, GA Good morning. Good morning. May it please the Court. I'm Sam Lucas and on behalf of co-counsel, we represent the City of Calhoun, GA. In this case, we ask this Court to reverse the District Court's second grant of a preliminary injunction, which found the standing bail order to be unconstitutional. The injunction should be reversed for all the reasons posed in our briefs, but in my time today, I'd like to address two topics. First, I'll address the Court's questions posed in its memorandum to counsel, and second, I'd like to address that the injunction should be reversed. Let me before, so to make sure we're on the same page, I just want to make sure what you're challenging. As I understand it, you're challenging the 24-hour limit versus the 48-hour limit, correct? Yes, Your Honor. All right. And I understand you're also disagreeing with that part of the injunction that sets up this affidavit procedure. Is that correct? That's correct, Your Honor. Now, there's a third thing you could be challenging, which is the injunction's requirement that a person who's been determined to be indigent must be released immediately on their own recognizance. But I gather, while I don't know that you're necessarily conceding that's constitutionally required, you're not challenging that because your own order has that provision. Is that correct? That's correct, Your Honor. All right. And we would agree that the Constitution does not require that, but Judge Smith decided that that's what should be done in the city of Texas. All right. I just want to make sure we're on the same page. Thank you. But the injunction should be reversed because it rests on an unsupported and overbroad interpretation of the Constitution, and the sole support in the district court's order was the Southern District of Texas' opinion in O'Donnell v. Harris County, which has now been reversed. Simply put, if the Fifth Circuit is correct that the federal due process right entitles a detainee to a hearing within 48 hours, the standing bail order satisfies the Constitution and the injunction should be reversed. Turning to the memorandum of counsel, this Court asked about the impact of Georgia's legislative changes to 1761 and whether that impacts this Court's ability to decide the case or moots Mr. Walker's request for injunctive relief. To the extent that question is posed towards the ability of the city of Calhoun to operate under the standing bail order under the legislative changes, the answer to both questions is no, specifically because while subsection E did not previously apply to misdemeanor bail or specifically apply to a review of bail after it had been preset under F-1, the legislature has made no finding that it should apply in the changes to that. But that argument takes a little more time than I have today. I'd be happy to submit a supplemental brief to explain why subsection E does not apply. But for purposes of today, assuming that subsection E-2 does apply to misdemeanor bail in this context, the standing bail order satisfies all the protections provided in subsection E-2. Specifically, the standing bail order provides a review of the financial conditions of an arrestee  Specifically, because as soon as possible is a defined term under Georgia law. Specifically, 1-3-3, subsection 5 defines as soon as possible means, quote, within a reasonable time, having due regard to all the circumstances. And statutory and case law show that within 48 hours is a reasonable time in these circumstances. First, Georgia law provides that arrestees are entitled to a probable cause hearing within 48 hours of arrest. Can I just talk to you about, you know, I was a prosecutor, a line prosecutor many years ago, and it was in a small office, and so I got to see people booked in after they were arrested. And what would happen then was, you know, somebody would meet with them very, and these are people charged with federal felonies, not misdemeanors, meet with them, figure out what their financial situation was, collect that information, and then basically walk from the booking room into the courtroom with the magistrate judge and make a recommendation about what the magistrate judge would do. What I'm having a hard time figuring out is, I mean, I think you've pointed out all the case law about time limit, but what happens during that 48 hours or 24 hours, as the case may be, that can't happen at the time of booking? Well, Your Honor, as the city attorney has stated to me specifically, that in an individualized hearing case in the term in Calhoun is that you have to get the players to the game. The judge has to get there, and in this case, under the standing bail words, providing the additional protection of appointed counsel to get them to the hearing so that the judge can make that determination. Well, let me ask you about that. So, as I understand it, Judge Smith performs this judicial duty on Mondays. Yes, Your Honor. So, I mean, are you all increasing her schedule, or how are you going to deal with that if the judge has to be there? Yes, these hearings, the judge could also, she's put in the order that if it's possible and it needs to be done quicker, she can do it by teleconference or over videoconference, or the judge can go to the jail and conduct those hearings at the jail, not just in the courtroom on every Monday. So, on days other than Monday, it could be done any one of those other three ways. Judge Murphy's injunction says that the decision can be made by somebody at the jail, or I'm flipping through his order, I don't have it right in front of me, but he named several other people besides the judge. He does, Your Honor. I mean, do you ever do it without the judge? Well, Your Honor, the standing bail order was actually entered in November 23rd of 2015, and we were enjoined in February, so there wasn't a whole lot of time to operate under the standing bail order. But now Judge Smith has determined, under the standing bail order, that it's a better assurance of appearance at trial that that person would talk to her. And do you know why that is? Your Honor, all I can take is from the face of the standing bail order that Judge Smith understood the reasons behind bail and the requirement of assuring presence at trial. And while Judge Murphy respectfully thinks that it can be done with a jailer, who doesn't have to be a post-certified police officer and an affidavit, I'd respectfully submit that a defendant swearing to a judge who may end up sentencing them, if convicted, that I'm going to promise to show up and this is why I'm indigent, is a whole world of difference than saying it to a jailer. I'm going to keep you up a little bit longer than you're telling. I think my colleagues have more questions for you as well. So is more information collected between booking and when this appearance before Judge Smith happens? It could be collected. Specifically, the arrestee would have time to meet with the attorney before the hearing, so there could be information collected by the arrestee to present regarding indigence or not just indigence, just inability to pay or objecting to the amount and asking the judge to reduce the amount that was preset as authorized under 1761F1. So your idea is that the defendant needs to talk to his counsel before he's able to fully advise about his own indigency? Well, that's how I read it as Judge Smith is providing that extra protection, Your Honor. But to be clear, the standing bailer does not require a holding period of 48 hours. That's the absolute upper limit, maximum. And at the end of the 48 hours, they're gone, right? If the hearing does not occur within 48, everyone gets released on their own recognizance regardless of whether they're indigent or not because the hearing hasn't been held. It's a within 48-hour period such that in one case it could be 48, 47, could be 36, could be 24, could be 30 minutes after arrest. It just depends on how long in the resources to get the judge there. It's a totally different situation than, say, in Fulton County where they have judges on call 24 hours a day. And that's, if you look at 1761, the definition of as soon as possible is a reasonable time. It's a statewide declaration, assuming it applies, such that as a reasonable time in Fulton County may not be the same reasonable time in Calhoun or Hayhira. But, you know, I guess I feel like my job today is to tell you what worries me about your case so that you can have a chance to respond to it. As I read your briefs, you seem to think that there's just a rock-solid 48 hours and you're protected within that period of time. Yes, Your Honor, specifically because looking at Gerstein v. Pew, the U.S. Supreme Court stated that the procedures and standards for arrest and detention come from the Fourth Amendment. And McLaughlin looked at the Fourth Amendment specifically and adopted the 48-hour safe harbor burden shifting standard, which we think should possibly, you know, apply in this case to the standing bail order. But what worries me about that is the language from McLaughlin that says, you know, there is no rock-solid 48-hour period. You know, I'm reading from McLaughlin, such a hearing, you know, the 48-hour hearing, nonetheless violates Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Absolutely, Your Honor. The 48-hour period, as this Court has stated, is presumptively reasonable. It's a burden shifting standard, but what it also does is immunizes a city or a county who adopts a policy of providing them within 48 from a systemic challenge, which is exactly what we have here. So back to my days as a line prosecutor. If, in these cases, whatever information is taken at booking is all you've got and no additional information is gathered, is it your position that you can still hold somebody for 48 hours or 47 hours and then give an appearance then and comply with McLaughlin? If that's not delay for delay's sake, and McLaughlin lays out some examples of what are unreasonable delay, delay for delay's sake, delay for getting more evidence. But that was a yes? Yes, Your Honor. The only information gathered is at the time of booking. Your position is you can hold them for 47 hours, even if no further record is developed in that regard, so long as you give them that hearing at hour 47? If as soon as possible applies, Your Honor, I think it would depend on the specific circumstances. I'm giving you the specific circumstances. You've got everything that you're going to get in the booking process. Nothing else happens. I mean, no other information is gathered. The report taken at the time of booking is then given to Judge Smith at hour 47, and that's when the determination is made, the bail determination. Is that, you feel like you've complied with? Assuming that's the reasonable time that Judge Smith could get there. I think you have to look at her circumstances as well. If she's not available to have the hearing at that point in time, then that's not an unreasonable delay if you apply McLaughlin's standard here, because she may be in the middle of a jury trial and have something going on, and she can't get there at that point. And if you apply E-2 as soon as possible, is a reasonable time taking all the circumstances? And in this case, as McLaughlin said, you have to look at both sides. You have to look at the judge getting there to conduct this hearing as well as the other circumstances, Your Honor. All right, thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Paul Clement for the AMICI, the American Bail Coalition and the Georgia Association of Professional Bondsmen. What I'd like to start with, Judge Martin, is your line of questions that you were just asking. I mean, I think that, you know, this might be a different case if after 48 hours or 47 hours the judge did nothing more than rely and do nothing else than rely on the same affidavit that could be gotten as part of the intake process. But I think what the City of Calhoun is entitled to do is to say, we don't want to just rely on an affidavit of indigency, you know, for a variety of reasons, including maybe we're worried that if it becomes widely known that the way you can get out of having to post bail is to just file an affidavit of indigency and then you're out immediately. I think the City of Calhoun is entitled to make the reasonable judgment that we actually want this to be determined by the judge as part of the initial hearing. But they've also made the determination that after 48 hours, if they haven't seen a judge, it's okay to just let them go on their own cognizance. They have said, if you don't see a judge within 48 hours, we're going to let you go. I think that's envisioned as a way to make sure that the hearing happens within 48 hours. So I view that as an added protection. But you understand the point I'm making. I mean, if it's not safe to let them go 47 hours into it until they've seen a judge, why is it safe to let them go at 48 hours if the judge hadn't been available? I don't think it really is, to be perfectly candid. But the point would be I don't think that can give rise to a facial defect in the policy. And I certainly think that the way that the policy could be administered and the way that I understand that it's envisioned to be administered is that 48-hour rule is not going to kick in except maybe an extremist, maybe if the judge is just not available and there's no way to get a hold of it. But in the normal instance, the way this is supposed to work is you get the hearing in front of the judge in 48 hours or less, and then you get a determination of whether you're truly indigent. You may also get sort of an interim determination which says, all right, well, this is a pretty serious offense. This is driving under the influence, and this has got a $2,000 bond, and you can't pay that, but maybe you can pay $1,000, and that's what we're going to put in a bond for. I think that can also happen at this individualized hearing. And so I think from a constitutional standpoint, I think the absolute most that the Constitution gives you is a right to this kind of individualized determination within 48 hours. Again, to be candid, I don't even think 48 hours is the constitutional requirement when it comes to this kind of individualized hearing in the bail context. You think it could be longer? I think it could be longer, and the Federal Bail Act contemplates that it could be longer. But we have McLaughlin, do we not? We do, but McLaughlin's focused on the probable cause determination. And obviously there are differences with the federal system, and I think my friends would say, well, the biggest difference in the federal system is nobody can post pursuant to a bail schedule and get out of bail immediately. But putting that to one side, in the federal system, the basic statutory rule says that you have a constitutional entitlement to probable cause hearing within 48 hours, but then as to your individualized bail determination, under the statute itself the prosecutors can ask for a delay of up to 72 hours. So I bring that up not to litigate a case that's not before you, but to maybe emphasize that it's probably important here to rule relatively narrowly so you don't needlessly call into question the constitutionality of the federal law or, again, the Georgia statutory provision, as I understand it, contemplates a hearing, a bail hearing, within 10 days. So there are all sorts of other deadlines out there that are longer, and I think the important thing, and I think the Fifth Circuit decision in the O'Donnell case really brings this home, is that 48 hours makes it obvious that there's not a constitutional problem, and then if that's true, an injunction that's entirely focused on the difference between 48 hours and 24 hours can't stand. It's just not based on the likelihood of a constitutional violation in the delta between 24 hours and 48 hours. Thank you. Good morning. Good morning. Before I begin, Judge Martin, may I inquire, just so I can plan, if my time is being adjusted in light of the topside argument? I think we talked before the argument. Go with 15, and if there are questions, there are questions. We talked before the argument and decided that we would try to give everybody a chance to say whatever they have to say. I appreciate the court's consideration. May it please the court, Daniel Volchok for the appellee. Your Honors, just to start with the new Georgia law, our position, and it sounds like we agree with the other side, is that it does not affect this appeal. The city has said that they don't think the new law even applies to the standing bail order. Again, we agree with the city in the sense that if the court is inclined otherwise, we would ask for an opportunity for the parties to brief that issue. But otherwise, we submit the court should go ahead and resolve the appeal. In particular, the preliminary injunction should be affirmed because under binding precedent, it was the city's obligation to justify its imposition of wealth-based pretrial detention, and it utterly failed to do so. Let me talk first about the precedent. Well, even if it doesn't apply, as you suggest, wouldn't the standing order be in compliance with it in any event? No, Your Honor. It depends on how as soon as possible is interpreted, and that's one reason that it is not moot is the city could, and it sounds like it does, interpret as soon as possible to be more than 24 hours, and so we don't think that that is consistent with the Constitution. But doesn't McLaughlin tell us that up to 48 is presumably constitutional? No, Your Honor, and I'm happy to go straight to McLaughlin. It is really their one argument on the merits. I do want to put down a marker, if I may, Judge O'Scanlan, before I begin, because you heard a lot of arguments this morning about why the city actually needs up to 48 hours. McLaughlin is not such an argument, as I'll get to in a minute, but you heard a lot about time to get the players, more info can be collected. Your Honors, oral argument before the Court of Appeals is not the time to first make arguments. None of what you heard this morning was put into evidence below or even argued in the city's briefs, and this Court should do what it and other appellate courts regularly do and properly, which is decline to disturb a lower court ruling based on arguments that were not both preserved below and made in the briefing in the Court of Appeals. The city of Calhoun, this case is going back. The city of Calhoun is free to offer those arguments or others along with evidence in front of the district court when the case goes back, presumably for permanent injunction proceedings. Any arguments it makes can then be ruled on by the district court. If necessary, brought back here, briefed, and decided by this court on a proper record. We do not have any justification offered here by the city for its imposition of wealth-based detention. And let me stress— Well, remind me a little of what the evidentiary record was below. My understanding was that when this started, the big concern was that people were languishing for a week or more like your client, and you ultimately get to the remedy when the case is remanded to Judge Murphy that he decides, I can improve on the 48 hours. The Supreme Court said, I'm going to lower it to 24 hours. What record did you all have to suggest to him that that was an appropriate thing to do? We put in evidence about—the facts were real. I mean, the key facts here, Judge Carnes, were really— I mean, did you put in evidence yourself saying, hey, you don't need 48 hours, 22 will do it? Did you have that kind of evidence? No—well, we did put in evidence to that effect, Your Honor, but I want to be absolutely clear. Strict scrutiny applies. I'm asking you a question. I mean, I think your affidavits were mostly, look at all these people that have stayed out more than a week, and I didn't—and I haven't read it carefully. I didn't think your evidence was designed to get to the point whether it's 48 or 36 or 32. It was just, this is too long, and it's Judge Murphy's innovation may be guided by you to, hey, let's see if we can improve on what the Supreme Court said. Well, to be—again, I do want to get to McLaughlin. I would disagree with that characterization, but I don't want to get bogged down. Well, tell me why. I was trying—I will, Your Honor. I was trying to get to your question about what we put in by saying we had no burden to put in anything. That's a little bit of an overstatement, because as the moving party, we had the obligation to show our entitlement to a preliminary injunction, and we did. Well, if you're trying to knock a 48-hour Supreme Court standard down to something else, somebody has a burden to explain. All right. Let me go right to McLaughlin. There's two reasons that the McLaughlin rule should not be imported and two reasons why, even if it is imported, that doesn't provide any basis for vacatur or reversal. And maybe it's even easier if I start with the latter, which is why there's no basis to reverse, even if you import the 48-hour standard from probable cause over to a bail hearing. Number one, Supreme Court in McLaughlin was not confronted with a jurisdiction that was providing probable cause hearings for the wealthy sooner than for the indigent. And it certainly said nothing to approve that kind of suspect wealth-based discrimination. Well, that's a little beyond what we need to hear. Certainly, there's nothing in the standing order that creates two classes of people, wealthy people and those who are indigent. Oh, there absolutely is, Judge O'Scanlan, and respectfully, you do need to hear this because McLaughlin would resolve our claim of a violation to our right to pretrial liberty. It does nothing to resolve our separate claim to a right to be free from wealth-based discrimination. The standing bail order absolutely creates two— Well, I just have some difficulty looking at this in such pejorative terms. I don't see anything in the standing order which privileges, quote, wealthy people, unquote. It's a bail order which applies to everybody regardless of what their circumstances are. Your Honor, that is one of the arguments especially that the American Bail Coalition puts forward, which is that the ordinance is facially neutral. The Supreme Court in Griffin v. Illinois and again in Williams v. Illinois rejected precisely that argument by saying a statute neutral on its face can be, quote, grossly discriminatory in its operation. And that's a quote from both cases. And if it is, Bearden, Tate, Williams, Pugh v. Rainwater and Frazier v. Jordan make clear that is an equal protection violation. I don't mean to be pejorative, Judge O'Scanlan, but getting back to Judge Karn's question, the facts really are undisputed. Well, you can't—those cases say you can't punish somebody, but clearly you can have regulatory purposes and, you know, look at the federal bail system where people are detained for long, long periods of time based on safety to the community. That's the regulatory purpose. The regulatory purpose here is to figure out what you've got going on, who can afford to pay, who can't. That takes a period of time. And the city is entitled to take the amount of time that it can show it needs in order to do that. That would satisfy strict scrutiny. It put in no evidence below and no argument here that it needs any particular amount of time, let alone up to 48 hours to make the straightforward determination of indigent. But Judge Karn's another important point. Bearden, Tate, and Williams are about imprisoning convicted persons, and so you're talking about punishment and deterrence and those rationales. Pugh v. Rainwater, former Fifth Circuit sitting on bonk, its decision binding here applied those holdings in the bail context. O'Donnell, which the other side referred to, came to exactly that conclusion three months ago, footnote six of its opinion, that Pugh is binding, it said on that court, and if followed it would be on this court, as far as heightened scrutiny being required for imposing wealth-based detention on pretrial arrestees. Let me get back to McLaughlin, if I may. I talked about the first reason why it would not warrant vacancy even if imported, and I have to put a sharp point on it, which is to say, if this court were to reverse or vacate simply based on O'Donnell, I don't know why Calhoun or any other jurisdiction in this circuit could not tomorrow start giving bail hearings sooner to people of one race, gender, or religion than people of a different race, gender, or religion. That is what we're talking about. Recall the language of Frazier v. Jordan, which shows that strict scrutiny applies, and they don't even address Frazier v. Jordan, although they say it's rational basis review. Frazier v. Jordan says imposing a fine like this or this sort of wealth-based discrimination creates, quote, a suspect classification that invokes the compelling government interest test. That is from Frazier v. Jordan, again, former Fifth Circuit. So it was the city's burden to put in that evidence, and they did not. The second reason, I'm sorry. Mr. Clement was telling us, too, that this case has ramifications. If you think 24 hours is all it will do, and I don't know why 24, why not 2, 3, 4, but 24 is what you got. I mean, what about the federal bail statutes that go a lot longer than that? They're in deep trouble at this point, too. No, they are not, Judge Carnes. Respectfully, what the Supreme Court said in Salerno in analyzing the bail reform act was exactly what we are arguing for, which is that people can be detained. There can even be wealth-based discrimination to the extent the governmental entity, whatever it is, can satisfy strict scrutiny, can show that it is necessary to further a compelling government interest. Just to take an example, we agree that whatever time is necessary for booking, for fingerprinting, for photographing, those sorts of things, that amount of time is legitimate. And if the city can show that some additional period of time is required in order to make the indigency determination, again, there were some references to public safety or to determining risk of non-appearance. The city of Calhoun has forsworn all of that because it has, as was discussed in the topside argument, decided that every single person accused of a misdemeanor or traffic violation ordinance can get out on bail, either by paying the secured bail amount or waiting 48 hours and proving indigent. So as far as the implications of a ruling here, Judge Carnes, I think it would be very narrow if you rule in the way that we suggest, which is to say, under binding precedent, it was the city's burden to satisfy strict scrutiny, and they put in nothing. And the court is free to say this case is going back, and nothing we say here precludes the district court from considering additional evidence or arguments that Calhoun, its amici, and, of course, our side, wants to put in on remand. But the city has come here asking this court for guidance and asking this court to reverse without making a record to satisfy the burden that it has under strict scrutiny. Let me get back to McLaughlin. The second reason that even if the court imported the 48-hour rule that there would be no basis for vacatur or remand, the city argues throughout its briefs, and this was alluded to a couple of times, Judge Carnes, in your questions, as though the standing bail order were in place when this complaint was filed. It was not. They had, as we were discussing, a system in which people were routinely detained 3, 4, 5, 6, even 7 days. And they don't defend that here, rightly so. It's clearly unconstitutional, and that constitutional violation invoked, as we discussed, I think it's pages 47 to 48 of our brief, under Supreme Court precedent, the district court's broad, equitable discretion to fashion a remedy for the constitutional violation. And in particular, that discretion was not limited to imposing only that which the Constitution affirmatively requires for those who have not committed a violation. The court could go beyond that. So that's why we said even if this court doesn't need to reach the 48-hour question or even if it disagrees with us and imports McLaughlin, the district court had discretion in light of the violation of the original policy to impose something else. And the two reasons why it was not a clear abuse of discretion for the district court to do 24 hours, and again, at that point, we really are talking about abuse of discretion. Number one, it is a very real harm to people to be locked up for two days. This is one of the key points I hope to leave with the court. There are real harms here. There is loss of employment. There is inability to care for young children or possibly sick parents. And on the other side, so in light of those harms, and this court has said in the United States. Let me interrupt you. There is also a balance here, too, as opposing counsel. So there is a desire on the part of the city to have people show up, and there's a desire to have some sort of procedure that will impress on them the importance of them showing up. And in that line, I'd like to ask you, I'm just interpreting part of the injunctions, difficult for me. The affidavit section seems to suggest to me that as long as a person files an affidavit and puts zero in all the columns or a low number, that when you actually have Judge Smith coming back ready to have court, she's there. Is it your reading of this injunction that she has no ability to reject the affidavit, to ask some questions, to make sure that, in fact, that's true? Because when I read the injunction, it looks like you put the right numbers on the affidavit, and out the door you go. How do you read the injunction? No, Judge Carrs, that's not correct. Let me say as a threshold matter, I mean, I don't think the court should skate past the fact that this is, the affidavit is made under penalties of perjury. If it's falsified, that is a separate charge, perhaps even a felony. So I wouldn't say that people would just likely falsify, but in any event, the injunction incorporates the exact language from the standing bail order, and it's at page 25 of the district court's second order is what I'm going to be reading from. What the district court said was if the affidavit shows indigence under the federal standard, and again, this is all what the city of Calhoun itself adopted, and I think that's important just to sidetrack for just a moment, Judge Carrs. You referred to the city's interest in ensuring people will appear. As I said, they have allowed everyone to go free as long as you paid the money or can show indigence. If another jurisdiction comes in, and many do, and base bail on the likelihood of non-appearance, that may be a very different case, and a court can then decide whether that satisfies strict scrutiny and all the other questions that the city has not properly preserved. But, Judge Carrs, back to your question, it says if the affidavit shows indigence, then the person shall be freed, quote, unless there is evidence that the person has other resources that might reasonably be used to, et cetera, et cetera, et cetera. So if there is other evidence, again, that's page 25 of the district court's second order, and that language is quoted from the standing bail order. So what I just said about other evidence is in the standing bail order. So to be clear, the district court did not preclude the city of Calhoun from doing all of these by hearing with a judge. They are free to do that. They get the affidavit filled out, and then a judge, or as you referred to, Judge Martin, I think it was, a law enforcement officer, the court clerk, other official. But if they want, he gave them the flexibility to have a hearing for everyone and have a judge look at it and have other evidence come in. So it is only if there is no other evidence. And, of course, the affidavit is filled out. So the district court's order does not take away that city, that flexibility from the city of Calhoun. Of course, the hearing would have to be held within 24 hours. And I do want to get to the two reasons that the 48-hour rule from McLaughlin should not be imported. I addressed the two reasons why, even if it is important. Well, what is out there in terms of other precedents that would establish a 24-hour rule? What is it that supports the 24 hours? To be clear, Judge O'Scanlan, we did not argue for a 24-hour rule. The district court adopted that as a matter, we think, of equitable discretion, giving the city some flexibility. You might argue six hours. We argue what we think comes right out of Supreme Court precedent, Judge O'Scanlan, which is that infringements of the right to pretrial liberty and the right to be free of wealth-based pretrial detention are permissible to the extent the government shows that it is necessary to further a compelling interest. So we don't think a flat rule is necessarily appropriate. I don't mean to fault the district court. Of course, the Supreme Court itself adopted a flat rule for the probable cause context in McLaughlin. So I don't mean to fault the district court. But we think our rule is what is more faithful to Supreme Court precedent. But your rule is no rule at all. I mean, you've got people processing, lots of people going through jail. And you have to have some period that's an outer limit. I mean, if your rule is as soon as possible, and we're talking about an injunction, where if somebody violates the injunction, that person can be held in contempt and go to jail. A rule as soon as possible is not a rule that's going to really work in an injunction. Every time somebody stays three hours instead of two, you haul the jailer in before federal court because he's violated the contempt order. I mean, you can't do it the way you suggest, correct? Of course we can do it the way I'm suggesting, Judge Garns. We can have a rule that I just articulated to Judge O'Scanlan, and the city does not detain people longer than the time it actually needs to hold. I mean, this is very straightforward. It does what it — if someone is arrested, they do what they need to do, booking, fingerprinting, photographing, verifying identity, verifying indigency. They do those things just as they do with the wealthy, and then they either take the money if the person decides to pay the amount in the bail schedule, or they verify indigency in whatever amount of time that reasonably takes, and then the person is free to go unless there is some further reason.  The second they've filled out the form, they're better if we're going to use a judge system. They'd better have a judge nearby immediately, within 10 minutes, 15 minutes, 20 minutes. I don't know what your timetable would be. Ready to hear that case then. It's not necessarily a judge, although, as I said, the city has the flexibility to use a judicial officer if they wish. The injunction specifically provides that this can be done by a court clerk, by a law enforcement officer. But the injunction is not the Constitution. And does the Constitution require a city to give up its right to have a judicial officer oversee these proceedings? No, and the injunction does not require that either, Judge Carnes. As I was saying a moment ago, the city is free to continue having these hearings with a judicial officer so long as they do it within 24 hours. And what the Constitution does require, I've articulated a number of times, is that people not be held, not have what this court has called irreparable harm, unnecessary deprivation of liberty, unless there is a good reason. And it is demonstrated frequently in hearings around the country by various jurisdictions. Strict scrutiny is satisfied. This injunction would be satisfied. What we're talking about is the city holding presumptively innocent people in jail without having shown any reason for doing so. I'm well over my time. I'm happy to answer further questions. I have just one more question. I'm listening to my colleagues and thinking about the three of us need to write an opinion together. And I'm hearing concern about the 24-hour limit put in Judge Murphy's injunction. And what I think you said is you didn't ask for a time limit. Is a time limit necessary? The time limit that we believe the Constitution and precedent requires is the amount of time the city needs to further a compelling interest. So the 24-hour time limit in the injunction is not necessary from your standpoint? If it will. Your Honor, they are, of course, the appellant. We are defending what the district court did, and they need to bring a good reason for it to be vacated. But in terms of what this court could say, I don't see a reason why this court couldn't say the Constitution is not necessary. Although, to be fair, I was going to say the Constitution doesn't provide a numeric limit as long as the city can show that it has a compelling reason that is necessary in order to effect this detention. That's the satisfaction of strict scrutiny. That's okay under the precedent. But again, we have to find under this court's precedent clear abuse of discretion. The 24 hours was a remedial provision. I think what Judge Martin is asking, that's abstract, and we have to deal with abstract principles to get to our final answer. If we're dealing now with an injunction with jailers who need to read something and know what they're supposed to do, is it okay with you if we strike the 24 hours? If the court replaces it with language that wealth-based detention and deprivation of pretrial right to liberty is permissible only so far, insofar. And that translates to another language for a jailer. That tells a jailer nothing. That tells you nothing. We're talking about injunction, not the ultimate merits of the case. What are the jailers supposed to do? Judge Cards, I don't think it tells the jailers nothing. It tells them, when you've got a reason to hold them, hold them, do what you need to do, and let them go. But if the concern is the jailers don't understand the sort of language I was articulating, I think that may well be one of the reasons that the district court imposed 24 hours. And so that may be a reason to leave it in place. But either way, there either has to be the limit here because they have not shown clear abuse of discretion, or it has to be what comes directly out of Supreme Court precedent, which is that the government needs a compelling interest that is necessarily furthered by deprivation of the rights against wealth-based discrimination and the right to pretrial liberty. Anything else? All right. Thank you very much. Thank you, Your Honor. Thank you. Mr. Lewis, I don't want to forget to ask you this. Under the new statute, I assume that the city of Calhoun still says there's no basis under Georgia law that allows for unsecured bonds. Yes, Your Honor. That remains our position. And to answer Judge O'Scanlan's question about timing, this is the first time that Mr. Walker's counsel has argued about this amorphous time. Up until this point and the first time we were in the other courtroom, his counsel argued for an immediate bail hearing, that the Constitution required an immediate bail hearing. To answer your question, Judge Martin, why do we need a time frame? We need a time frame because this case is to what Pew v. Rainwater, is what McLaughlin was to Gerstein. You argued that last time too, didn't you? I did, Your Honor. And I'm still trying to get direction because here we are two and a half years later and the city of Calhoun is still asking for direction as to how to constitutionally employ the use of a master bail schedule when dealing with indigent arrestees. And the first circuit court answer to that, the first answer from a circuit court, being the Fifth Circuit in O'Donnell, says that there are three requirements. One, notice and opportunity to be heard and submit evidence. Two, within 48 hours of arrest. And three, a reasoned decision from an impartial decision maker. The standing bail order provides each of those requirements. In fact, the standing bail order goes further than what the Fifth Circuit required in O'Donnell. Specifically, it's going to give an individualized bail hearing to all arrestees, not just indigents. Second, it's providing appointed counsel for the individualized bail hearing. And third, if at that individualized hearing the court determines that that person is indigent and there are no other holds, then that person is going to be subject to release on their own recognizance. That result was one that the Fifth Circuit explicitly rejected was required under the Constitution. The standing bail order goes further than what the Constitution requires. And therefore, the district court erred in prohibiting the city of Calhoun from operating under it. Of course, you know, as your friend on the other side says, you know, that's all in the merits decision, which is not really our job. Our job is to review the injunction. That's correct, Your Honor, but this is a facial attack on the standing bail order that's at issue in this injunction. And under Solantic, this court can get to those. And specifically regarding the overbreadth argument, Your Honor, under Gibson v. Firestone, this court stated in 1984 that although federal courts have broad equitable powers to remedy constitutional violations, injunctive relief must be tailored to fit the nature and extent of the established violation. It must be limited in scope to the extent necessary to protect the interests of the parties. That's the 48-hour limit at most, Your Honor, in this case. Let me ask you how we'd actually write this order. Let's assume, just talking for me, let's assume that we decide back to the two things you care about, that we're going to strike the 24-hour part of Judge Murphy's injunction, and say 48 hours is ample. Let's assume you're also going to win on your affidavit point. The Constitution doesn't require this affidavit procedure, nor do I think there's anything in the evidentiary record to suggest that's necessary. So that's gone. So what are we exactly enjoining? We are saying there's nothing much left of Judge Murphy's order except the time limit part, and then are we going to wed with that your concession that your particular, should we make what you agree in the standing order now part of an injunction, in other words? No, Your Honor. What we simply ask is for this court to reverse the district court's grant of the injunction because the standing bail order complies with the Constitution. This court does not need to set the limit, doesn't need to say how far it is, if it's 72 or what, you know, Mr. Clement says, but this court just needs to say, well, whatever the Constitution requires, it doesn't require more than what the standing bail order provides. We ask this court to reverse the injunction because the standing bail order provides meaningful consideration of the alternatives to monetary bail within a time period the Supreme Court has held to be prompt and under the Constitution. As stated in the government's brief, this court should correct the district court's error by finding the presumption of constitutionality and applying that to the 48-hour time frame contained in the standing bail order. We ask this court to reverse the injunction. Thank you. Thank you. Your Honors, I have just one more minute, and I just want to make one point. My friend representing the appellees would like you to apply the Williams-Tate-Brearden line of cases to bail, and that would be a very revolutionary step. From the very beginning, the institution of bail, unlike the punishments at issue in those cases, has had almost as an implicit idea that not everybody is going to have enough resources to post the amount of bail. That's just inherent in the concept of bail, and courts have consistently rejected the argument that the Eighth Amendment excessive bail provision gives you a right to affordable bail. So if you go down that route, there are just all sorts of difficult questions that you have to confront, including the question that Judge O'Scanlan confronted in his dissenting opinion in the Lopez-Valenzuela case about how do you conform substantive due process in the Eighth Amendment for purposes of this kind of claim. And all of those difficult steps are unnecessary because the furthest any precedent goes to suggesting those cases apply to bail is Pew v. Rainwater. All Pew v. Rainwater says is we're going to reject a facial challenge as long as there's some mechanism for an individualized determination. It doesn't specify itself what time would be sufficient. And then this Court can simply say, look, 48 hours. That complies with McLaughlin. It complies with the Fifth Circuit's O'Donnell case. And that gives us enough basis to vacate this injunction, and everything else can wait for another day. Thank you, Your Honors. Thank you. We appreciate the presentation. It was helpful. Thank you all.